# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SEAN BEST,                                              *

Plaintiff                                              *

v                                                      *          Civil Action No. ELH-18-3225

BALTIMORE COUNTY,                                      *
BALTIMORE COUNTY P.D.,
JOSHUA PHIPPS,                                         *
JEFFREY DUNHAM,
DAVID CRUM,                                            *
DOE OFFICER 4,
P.A. RONALD GRUBMAN, and                              *
MEMMIE PEAL,
                                                       *
Defendants

*** 

## MEMORANDUM OPINION

While detained at the Baltimore County Detention Center ("BCDC"), the self-represented plaintiff, Sean Best, filed suit pursuant to 42 U.S.C. § 1983 against Baltimore County; the Baltimore County Police Department ("BCPD"); and BCPD Officers Joshua Phipps, Jeffrey Dunham, David Crum, and "Doe Officer 4."  ECF 1.  Best later filed an Amended Complaint (ECF 31), to include claims against BCDC medical staffers Ronald Grubman and Memmie Peal (collectively, the "Medical Defendants").

Notably, the Amended Complaint abandoned the claims against the BCPD and Doe Officer 4.  ECF 31.  Accordingly, Best's claims against BCPD and Doe Officer 4 shall be dismissed.

The Amended Complaint, which is unverified, is rooted in events that occurred in August 2016.  Best claims, *inter alia*, that Officers Phipps, Dunham, and Crum, who are all Caucasian, discriminated against him, subjected him to an illegal search and seizure in violation of his

constitutional rights, and refused to take him to a hospital for his resulting injuries. *Id.* at 8-14. He also alleges that after he was taken to BCDC, the Medical Defendants were deliberately indifferent to his serious medical needs. *Id.* at 14-15. Best seeks $270 million in punitive and compensatory damages. *Id.* at 6-7.

The Medical Defendants have moved to dismiss Best's Amended Complaint for failure to state a claim. ECF 56. It is supported by a memorandum. ECF 56-1 (collectively, the "Medical Defendants' Motion"). Baltimore County and Officers Phipps, Dunham, and Crum (collectively, the "County Defendants") have moved to dismiss or, in the alternative, for summary judgment. ECF 58. Their motion is supported by a memorandum of law (ECF 58-1) (collectively, the "County Defendants' Motion") and several exhibits.[1]

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Best that the failure to file a response in opposition to the defendants' motions could result in dismissal of his amended complaint. ECF 57; ECF 60. Best filed nothing further.

The matter is now ripe for disposition. Upon review of the record, exhibits, and applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). The Medical Defendants' Motion shall be granted. The County Defendants' Motion, construed as a motion for summary judgment, shall also be granted.

## I. Factual Background

### A. Best's Allegations

Best claims that at approximately 11:00 p.m. on August 16, 2016, he was "assisting a Caucasian woman named Nina" by helping her load items into her car, which was parked at the

---

[1] These are the defendants' second round of dispositive motions. *See* ECF 26, ECF 47, ECF 50.

rear lot of the El Rich Motel in Rosedale, Maryland.  ECF 31 at 8.[2]  At the time, Best was staying in a motel room with a female friend and his car was also parked in the rear lot.  *Id.* at 8, 10.  As Best lit a cigarette and spoke to Nina, a white male wearing a black hoodie and khaki pants came down the staircase leading from the motel to the parking lot.[3]  *Id.* at 8.  At the same time, a marked police car came from the side of the motel and two uniformed officers exited the vehicle.  *Id.*  Trying to avoid police activity, Best began walking to his motel room.  *Id.*

The officers drew their weapons.  *Id.*  Nina asked what was going on.  *Id.*  One of the officers responded that he received a report regarding "a black man trying to rape a white woman."  *Id.*  Nina then explained that Best was a friend who was helping her load her belongings.  *Id.*

Best claims that he tried to talk to one of the uniformed officers but was ignored.  *Id.* When Best tried to speak to the man in the black hoodie, he was told to "shut my 'nigger mouth' if I 'wanted to live.'"  *Id.*  Again, Nina explained that Best was her friend, to which Officer Dunham, the driver of the police car, said: "[S]o your [sic] [a] nigger lover Huh?"  *Id.* at 9. Dunham also allegedly said:  "[W]e don't fucking like your kind out in the country."  *Id.*  Nina began trying to record the incident on her phone, but Officer Crum snatched her phone and broke it on the ground.  *Id.*  Officer Crum then asked Nina for her license, which she provided.  *Id.*

Best again attempted to leave the parking lot and return to his motel room.  *Id.*  At that time, he was hit in the back of the head with an unknown object, and he felt cold steel in the back of his neck.  *Id.*  He was told to get down on his knees and to place his hands behind his head. *Id.*  Best saw that his car door was open, and an officer was searching his vehicle.  *Id.*  Noting

---

[2] All citations reflect their electronic pagination.

[3] It is unclear whether Best is alleging that this individual was one of the defendant police officers.

3

that Best had New York license plates, the officer then asked Best if he was transporting drugs or weapons. *Id.* Best said no and asked if he could leave, but he was kicked in the back. *Id.* at 9-10. Nina yelled for help while Best was kicked in the ribs. *Id.* at 10.

Officer Dunham asked Best why he was at the motel and whether he had a license. *Id.* Best said that his license was in the room where he was staying. *Id.* At that time, Best's friend, a white woman with whom he was sharing a room, came outside and began to yell at the officers. *Id.* The officers "told her to take her nigger loving ass back in the room" and began to punch and kick Best. *Id.* Officer Phipps then placed his gun in Best's mouth and told Best not to breathe while Officer Dunham performed a "*Terry* frisk."[4]  The officers found a lighter, cigarettes, a room key, an electric bill under the name of Best's brother, Keith McDermott, and $136 in cash to pay for the bill. *Id.* The officers took the items, along with Best's wallet, which Best's friend had brought down from the room, but not Best's ID card. *Id.* at 10-11.

Approximately 15 minutes later, the officers handcuffed Best because of an open warrant in Baltimore City. *Id.* at 11. Best claims that Officer Phipps placed the handcuffs on so tightly that they caused numbness and scarring. *Id.* Best was then placed in the back of Officer Dunham's vehicle. *Id.*

While in the car, the officers pulled up a picture of McDermott, whom Best believes is the person they are looking to arrest. *Id.* Best explained that he was not McDermott. *Id.* The officers asked Best to state his name, but he refused, asserting his constitutional rights. *Id.*

Upon arrival at the precinct, Best was taken to a holding cell and strip searched. *Id.* About an hour later, the officers acknowledged that Best was not McDermott and stated that Best could not leave unless he told them his name. *Id.* at 12. Best continued to refuse and Officer

---

[4] *See Terry v. Ohio*, 392 U.S. 1 1968).

Matteo took him to be fingerprinted.  *Id.*  Upon being identified, Best was taken before a county commissioner and charged with fraud "per identity to avoid prosecution" and making false statements to an officer.  *Id.*  Bail was set at $5,000.  *Id.* at 14.

Best claims that, at the time, he asked Officer Matteo if he could be taken to a hospital for his injuries, but Officer Matteo refused and declined to document Best's visible injuries.  *Id.* at 14.  Best was taken to BCDC, where he was seen by LPN Memmie Peal.  *Id.*  Best told Peal that he was assaulted by BCPD officers and asked her to photograph his injuries, but Peal refused, stating that it was not her job.  *Id.* at 14-15.  Due to Peal's refusal, Best declined to answer any of Peal's questions, and he refused all services.  *Id.* at 15.

On August 18, 2016, Best returned to the medical unit, where he was seen by PA Ronald Grubman.  *Id.*  Again, Best reported that he was assaulted by BCPD officers, and Grubman stated, "That's not what this is for."  *Id.*  Best alleges that Grubman threatened him with isolation if he did not respond, so Best answered his questions.  *Id.*

Best claims that, as a result of the incident at the parking lot, two of his teeth were broken and had to be removed; he continues to have migraine headaches and blurred vision; he has permanent scars on his wrists and minimal feeling in his hand due to nerve damage; he suffers from mental anguish; and his vehicle was vandalized after the officers left it open at the motel parking lot.  *Id.* at 4-5.

Further, Best claims that BCPD officers have engaged in a pattern, practice, and policy of violating the rights of African American citizens, and that the officers involved in the incident responded to an anonymous call with racial bias and malicious intentions.  *Id.* at 12-13.  He notes that Nina was never charged with a crime.  *Id.* at 13.  Best maintains that he was "racially targeted" by the officers.  *Id.*

According to Best, he was seized without probable cause, his vehicle was illegally searched without his permission, and he was unlawfully detained following an illegal arrest. *Id.* at 13. Best argues that any information discovered by the officers after obtaining his fingerprints and criminal record were "fruits of the poisonous tree." *Id.* at 14.

As to the Medical Defendants, Best claims that both Grubman and Peal failed to provide adequate medical care and were deliberately indifferent to his serious medical needs. *Id.* at 15. According to Best, Peal stated that he had "good teeth" despite having "Officer Phipps' gun jammed in." *Id.* However, Peal is not a dentist and thus was not certified to provide dental care. *Id.*

On August 23, 2016, Best posted bail. *Id.* at 14. The charges against Best were placed on the stet docket on October 20, 2016. *Id. See State v. Best*, Case No. 3C00436243 (Dist. Ct. Balto. Cty).

## B. The County Defendants

The County Defendants state that on August 16, 2016, an anonymous person called the Baltimore County Central Communications Center and asked the police to investigate a black male taking photographs of a white female who was removing her clothes in the parking lot behind the El Rich Motel. Call Data Sheet, ECF 58-5 at 2. Officer Crum was dispatched to the scene while Officers Dunham and Phipps monitored the call and also responded. *Id.* at 1.

Officer Dunham, who was the first to arrive, observed a black male with a white female wearing a black nightgown and yellow high heeled shoes. Incident Report, ECF 58-6 at 3. Officer Dunham asked both individuals for identification and the man stated that he did not have his identification on him but identified himself as Keith McDermott. The woman produced identification confirming her identity as Ourania Nina Levissianos. *Id.* Officer Dunham

checked open warrants for both individuals and saw one in Baltimore City for McDermott.  *Id.*
After the Baltimore City Police Department confirmed the warrant for McDermott, Officer
Dunham placed the man under arrest, without incident.  *Id.*

While being transported by Officer Dunham to the White Marsh Precinct, the man stated
that Keith McDermott was his brother's name, but he refused to provide his real name.  *Id.*  At
the precinct, the man eventually stated that his name was Sean Anthony Best.  *Id.*  Best was
fingerprinted and his identity was confirmed.  *Id.*  The fingerprints also revealed an open warrant
from the State of New York for violation of probation.  *Id.*  Officer Dunham charged Best with
fraudulent identification to avoid prosecution and making a false statement to a police officer.
*Id.* at 7.

### C.  The Medical Defendants

As noted, Grubman and Peal have moved to dismiss.  They note that virtually all of
plaintiff's allegations concern his "account of his allegedly wrongful arrest, assault and
incarceration . . . ."  ECF 56-1 at 4.  They posit that the Amended Complaint contains no factual
allegations that they injured plaintiff and thus the suit is barred as a matter of law under the
Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997€.  ECF 56-1 at 5.

## II.  Standards of Review

### A.

The Medical Defendants test the legal sufficiency of Best's Complaint by way of a
motion to dismiss under Rule 12(b)(6).  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017);
*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v.
Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221
(2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6)

motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (*per curiam*).  But, mere

"'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

## B.

The County Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters

outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *Zak v. Cheslea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without

discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub. nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure

to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se."  *Putney*, 656 Fed. App'x at 638.

Best has not filed an affidavit under Rule 56(d).  Indeed, he has not responded to defendants' motions.  Moreover, I am satisfied that it is appropriate to address the County Defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court

has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628

(4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because Best is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.  Discussion

As noted, the Medical Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6), arguing that Best's Amended Complaint includes no allegations that Grubman and Peal caused any physical injury to him, and thus fails under the Prisoner Litigation Reform Act, 42 U.S.C. §1997e.  ECF 56-1.  In their Motion, the County Defendants contend that: (1) BCPD is not a legal entity subject to suit; (2) Baltimore County cannot be held liable under the doctrine of respondeat superior; and (3) the genuine material facts do not support a violation of Best's rights under the Fourth, Eighth, or Fourteenth Amendments.  ECF 58-1.

### A.  Medical Defendants

At the time of the incident giving rise to this case, Best was a pretrial detainee in Baltimore County, Maryland.  Accordingly, his claims are analyzed under the Fourteenth Amendment.  *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those

provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016).  Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103.  It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . . .'" *Id.* (citation omitted).  Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. De Shaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, ___ F.3d ___, 2020 WL 8028611, at *9 (4th Cir. Jan. 12, 2021).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).  In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by

16

statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).   The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley*, 475 U.S. at 319-20; *see Farmer*, 511 U.S. at 832; *Raynor*, 817 F.3d at 127.   "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Of relevance here, in order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008).   The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.   Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available.  *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Proof of an objectively serious medical condition, however, does not end the inquiry. As the Court explained in *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017), "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry."

In the context of a claim concerning medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Similarly, the Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (Citation omitted). Put another way, "it is not enough that an official *should* have known of a risk; he or she must have had actual

subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.*; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."). Moreover, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106). Further, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis

19

added).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury.  Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial risk of serious harm.'"  *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98.  But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury."  *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835).  A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).  In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk."  *Brice*, 58 F.3d at 105.

But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard.  *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).  Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems.  *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012).

In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Here, Best claims that the Medical Defendants were deliberately indifferent to his serious medical needs upon his arrival at BCDC. In support of his claims, he states only that Peal refused to photograph his injuries sustained at the hands of the defendant BCPD officers; Peal opined that Best had "good teeth," despite not being a dentist; and Grubman refused to document his allegations against the BCPD officers. Best also states that he declined to answer any of Peal's questions during intake, and he refused all medical services.

Based on the allegations in the Amended Complaint, Best fails to allege that he had serious medical needs that went unaddressed by these defendants. Moreover, assuming that Best had visible injuries at the time of his initial encounter with Peal, he fails to allege facts that amount to deliberate indifference because he refused her services. Likewise, Best's allegation

that Grubman declined to document the incident with police at the motel parking lot fails to state a valid claim of deliberate indifference to a serious medical need. Therefore, the Medical Defendants' Motion to Dismiss shall be granted.[5]

### B.  County Defendants

Best claims that the BCPD officers lacked probable cause to arrest him, thus violating the Fourth Amendment, and any information they discovered after his arrest was improperly obtained. Best also alleges that the defendant officers used excessive force during his arrest, in violation of the Eighth Amendment.

1.  *Search and Seizure*

The Fourth Amendment protects citizens from unreasonable searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 8 (1968); *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018). A reasonable suspicion of criminal activity justifies police officers executing an investigative stop. *Terry*, 392 U.S. at 8; *Kehoe*, 893 F.3d at 237. In determining whether there was reasonable suspicion, the court must consider the totality of the circumstances. *United States v. Brugal*, 209 F.3d 353, 359 (4th Cir. 2000) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)); *see also Kehoe*, 893 F.3d at 237.

In order to state a claim under § 1983 for false arrest, a plaintiff must show that his arrest was made without probable cause. *See Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir. 1974). Probable cause exists if "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the

---

[5] To the extent that Best's Amended Complaint raises state law claims of medical malpractice and negligence, the court declines to exercise supplemental jurisdiction and thus will dismiss such claims, without prejudice. *See* 28 U.S.C. § 1367(c)(3).

petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *accord Santos v. Frederick Cty Bd. of Comm'rs*, 725 F.3d 451, 466 (4th Cir. 2013); *see Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017).

In his unverified Amended Complaint, Best claims that the BCPD officers arrested him after they found an electric bill in his pocket addressed to Keith McDermott, and believed that he was McDermott, who at the time had an open warrant in Baltimore City.  According to Officer Dunham's Incident Report, however, Best had identified himself to police as McDermott and was arrested after Baltimore City Police confirmed an open warrant under that name.  Based on this information, Best fails to show that the defendant officers did not have probable cause to justify his seizure.  His subsequent identification as Sean Best and the discovery of an open warrant in New York under that name were also justified.  Therefore, the County Defendants are entitled to summary judgment with respect to Best's Fourth Amendment claims.

2.  *Excessive Force*

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395-97 (1989); *see also Cty. of Los Angeles v. Mendez*, 581 U.S. __, 137 S.Ct. 1539, 1546-47 (2017) ("The framework for analyzing excessive force claims is set out in *Graham*.").  Reasonableness is assessed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Mendez*, 137 S.Ct. at 1546 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

The operative question is "whether the totality of the circumstances justifies a particular sort of search or seizure." *Id.* (quoting *Garner*, 471 U.S. at 8-9).  Factors to be included in making this determination include the severity of the crime at issue, whether there is an

immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396.  The determination is to be made "'from the perspective of a reasonable officer on the scene' . . . 'based upon the information the officers had when the conduct occurred.'"  *Mendez*, 137 S.Ct. at 1546 (first quoting *Graham*, 490 U.S. at 397; then quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)).  The Constitution "does not require police to gamble with their lives in the face of a serious threat of harm." *Waterman v. Batton*, 393 F.3d 471, 479 (4th Cir. 2005) (quoting *Elliott v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996)).  Further, "'the right to make an arrest' 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 192 (4th Cir. 2018) (quoting *Graham*, 490 U.S. at 396); *see also Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

Here, Best claims that the defendant officers physically assaulted him before placing him in the police vehicle for transport to the precinct.  According to the documents relating to Best's arrest, however, Officer Dunham arrived at the scene at approximately 10:30 p.m., identified the male and female individuals in the parking lot, and promptly arrested Best with the belief that he was McDermott.  *See* Statement of Probable Cause, ECF 58-6 at 4-6.  The arrest documents also reflect that Best arrived at the White Marsh precinct and was processed by 10:52 p.m.  Arrest Report Form, ECF 58-6 at 7-10.  He was not unconscious, semiconscious, bleeding, or otherwise in need of immediate medical attention during intake at BCDC the following day.  Patient History, ECF 58-9 at 1-2.  On this unopposed record, and in light of Best's unsupported allegations, Best has not shown that he was subjected to excessive force during his arrest.  Thus, Officers Dunham, Phipps, and Crum are entitled to summary judgment with regard to the excessive force claim.

3.  *Respondeat Superior*

As to defendant Baltimore County, Best does not attribute any specific action or inaction on its part that resulted in a constitutional violation.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation).  To the extent Best intends to sue Baltimore County in its capacity as the employer of Officer Phipps, Dunham, and Crum, he cannot succeed.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983).  Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability."  *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Best has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Baltimore County's employees.  As discussed above, Best has failed to show that his constitutional rights were violated.  Accordingly, he has necessarily failed to demonstrate that Baltimore County authorized or was indifferent to any such violation.  Moreover, Best's assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability.  *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse.").

Therefore, the County Defendants are entitled to summary judgment.

## IV.  Conclusion

Best's claims against BCPD and Doe Officer 4 are dismissed. The Medical Defendants' Motion to Dismiss is granted and the County Defendants' Motion, construed as one for summary judgment, is granted.

A separate Order follows.


January 14, 2021                                   _____/s/_____
Date                                               Ellen L. Hollander
                                                   United States District Judge